### In re RELAFEN ANTITRUST LITIGATION.

### Master File No. 01–12239–WGY.

United States District Court, D. Massachusetts.

Sept. 2, 2004.

William Alper, Cohen, Pontani, Lieberman & Pavane, New York City, for Eon Labs, Inc., Consolidated Plaintiff.

Meredyth Smith Andrus, Office of the Maryland Attorney General, Antitrust Division, Baltimore, MD, for State of Maryland, State of Oregon, State of Washington, Intervenor Plaintiffs.

Richard Alan Arnold, Kenny Nachwalter, PA, Miami, FL, for Walgreen Company, Consolidated Plaintiff.

Michael J. Boni, Kohn, Swift & Graf, Philadelphia, PA, for Meijer Distribution, Inc., Meijer, Inc., Direct Purchaser, Consolidated Plaintiffs.

Bernard J. Bonn, III, Abbey Gardy & Souitieri, New York City, for Glaxosmithkline PLC, Smithkline Beecham Corporation, Defendants.

Jacqueline E. Bryks, Cohen, Milstein, Hausfeld & Toll, New York City, for Meijer Distribution, Inc., Meijer, Inc., Plaintiffs.

Michael M. Buchman, Milberg, Weiss, Bershad & Schulman LLP, New York City, for A.F. of L.—A.G.C. Building Trades Welfare Plan, End–Payor Plaintiffs, Hy–Vee, Inc., IBEW—NECA Local 505 Health & Welfare Plan, Sheet Metal Workers Local 441 Health & Welfare Plan, Consolidated Plaintiffs.

Patrick E. Cafferty, Miller, Faucher and Cafferty, LLP, Ann Arbor, MI, for A.F. of L.—A.G.C. Building Trades Welfare Plan, End–Payor Plaintiffs, Hy–Vee, Inc., IBEW—NECA Local 505 Health & Welfare Plan, Safeway, Inc., Sheet Metal Workers Local 441 Health & Welfare Plan, Consolidated Plaintiffs.

Neill Clark, Berger & Montague, Philadelphia, PA, for Meijer Distribution, Inc., Meijer, Inc., Plaintiffs.

Eric Cramer, Berger & Montague, Philadelphia, PA, for Meijer Distribution, Inc., Meijer, Inc., Plaintiffs.

Brett T. DeLange, Idaho Attorney General's Office, Consumer Protection Unit, Boise, ID, for State of Idaho, Intervenor Plaintiff.

Glen DeValerio, Berman DeValerio Pease, Tabacco Burt & Pucillo, Boston, MA, for Smithfield Foods, Inc., Louise Houchins, Consolidated Plaintiffs.

Kathleen M. Donovan–Maher, Berman DeValerio Pease, Tabacco Burt & Pucillo, Boston, MA, for Louise Houchins, Consolidated Plaintiff.

Ruth T. Dowling, Palmer & Dodge, LLP, Boston, MA, for Eon Labs, Inc., Consolidated Plaintiff.

Nancy F. Gans, Moulton & Gans, PC, Boston, MA, for Meijer Distribution, Inc., Meijer, Inc., Plaintiffs.

George G. Gordon, Dechert LLP, Philadelphia, PA, for Glaxosmithkline PLC, Smithkline Beecham Corporation, Defendants.

Daniel E. Gustafson, Heins Mills & Olson, P.L.C., Minneapolis, MN, for A.F. of L.—A.G.C. Building Trades Welfare Plan, End–Payor Plaintiffs, Hy–Vee, Inc., IBEW—NECA Local 505 Health & Welfare Plan, Sheet Metal Workers Local 441 Health & Welfare Plan, Consolidated Plaintiffs.

Richard C. Heidlage, Attorney General's Office, Boston, MA, for State of Arkansas, State of Idaho, State of Illinois, State of Maryland, State of Oregon, State of Washington, Intervenor Plaintiffs.

Samuel D. Heins, Heins Mills & Olson, P.L.C., Minneapolis, MN, for A.F. of L.—A.G.C. Building Trades Welfare Plan, End–Payor Plaintiffs, Hy–Vee, Inc., IBEW—NECA Local 505 Health & Welfare Plan, Sheet Metal Workers Local 441 Health & Welfare Plan, Consolidated Plaintiffs.

Theodore M. Hess–Mahan, Shapiro Haber & Urmy LLP, Boston, MA, for Direct Purchaser, Elliot Franklin, Consolidated Plaintiffs.

Timothy C. Hester, Covington & Burling, Washington, DC, for Glaxosmithkline PLC, Smithkline Beecham Corporation, Beecham Group PLC, Consolidated Defendants.

Elizabeth J. Holland, Kenyon & Kenyon, New York City, for Teva Pharmaceutical In-

dustries Ltd., Teva Pharmaceuticals USA, Inc., Consolidated Plaintiffs.

Mayme A. Holt–Brown, Percy, Smith, Foote, & Gadel, LLP, Alexandria, LA, for Teamsters Local No. 35 Heath Plans, Elliot Franklin, Patrick J. Lynch, Consolidated Plaintiffs.

Donivan Irby, Office of Attorney General of Washington, Seattle, WA, for State of Washington, Intervenor Plaintiff.

Michael J. Kane, Mager White & Goldstein LLP, Jenkintown, PA, for Barbara Brown, Consolidated Plaintiff.

Robert N. Kaplan, Kaplan, Fox & Kilsheimer LLP, New York City, for Meijer Distribution, Inc., Meijer, Inc., Plaintiffs.

Kevin T. Kerns, Dechert LLP, Philadelphia, PA, for Glaxosmithkline PLC, Smithkline Beecham Corporation, Defendants.

Richard J. Kilsheimer, Kaplan Fox & Kilsheimer LLP, New York City, for Meijer Distribution, Inc., Meijer, Inc., Plaintiffs.

Peter Kohn, Berger & Montague, Philadelphia, PA, for Meijer Distribution, Inc., Meijer, Inc., Plaintiffs.

Steven J. Lee, Kenyon & Kenyon, New York City, for Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Consolidated Plaintiffs.

Theodore M. Leiverman, Spector, Roseman & Kodroff, Philadelphia, PA, for A.F. of L.—A.G.C. Building Trades Welfare Plan, End–Payor Plaintiffs, IBEW—NECA Local 505 Health & Welfare Plan, Sheet Metal Workers Local 441 Health & Welfare Plan, Consolidated Plaintiffs.

Lester L. Levy, Wolf, popper, Ross, Wolf & Jones, New York City, for Barbara Brown, Consolidated Plaintiff.

Richard D. Margiano, Cohen, Pontani, Lieberman and Pavane, New York City, for Eon Labs, Inc., Consolidated Plaintiff.

James W. Matthews, Sherin and Lodgen LLP, Boston, MA, for Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., CVS Meridian, Inc., Rite Aid Corp., Consolidated Plaintiffs.

Robert J. Muldoon, Jr., Sherin & Lodgen LLP, Boston, MA, for Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., CVS Meridian, Inc., Rite Aid Corp., Consolidated Plaintiffs.

Jonathan D. Mutch, Robins, Kaplan, Miller & Ciresi L.L.P., Boston, MA, for Insurer Group, End–Payor Plaintiffs, Consolidated Plaintiffs.

Dianne M. Nast, Roda & Nast, P.C., Lancaster, PA, for SAJ Distributors, Inc., Stephen L. LaFrance Holdings, Inc., Interested Partys.

Tim D. Nord, Oregon Department of Justice, Salem, OR, for State of Oregon, Intervenor Plaintiff.

Edward Notargiacomo, Hagens Berman LLP, Cambridge, for A.F. of L.—A.G.C. Building Trades Welfare Plan, End–Payor Plaintiffs, Hy–Vee, Inc., IBEW—NECA Local 505 Health & Welfare Plan, Safeway, Inc., Sheet Metal Workers Local 441 Health & Welfare Plan, Barbara Brown, Jennifer Kravitz, Consolidated Plaintiffs.

Linda P. Nussbaum, Cohen, Milstein, Hausfeld & Toll, New York City, for Meijer Distribution, Inc., Meijer, Inc., Plaintiffs.

Joseph Opper, Garwin, Bronzaft, Gerstein & Fisher, New York City, for Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Consolidated Plaintiffs.

Margaret H. Paget, Sherin & Lodgen, Boston, MA, for Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Consolidated Plaintiffs.

David K. Park, Willkie Farr & Gallagher, New York City, for Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Consolidated Plaintiffs.

David Pastor, Gilman and Pastor, LLP, Saugus, MA, for Tyler Fox, Consolidated Plaintiff.

Douglas H. Patton, Dewsnup, King & Olsen Salt Lake City, UT, for Teamsters Local No. 35 Heath Plans, Walgreen Company, Elliot Franklin, Patrick J. Lynch, CVS Meridian, Inc., Direct Purchaser, Consolidated Plaintiffs.

Bernard Persky, Goodkind, Labaton, Rudoff & Sucharow, LLP, New York City, for Meijer Distribution, Inc., Plaintiff.

Scott E. Perwin, Kenny, Nachwalter, Seymour, Arnold, Critchlow & Spector, Miami, FL, for Albertson's, Inc., Eckerd Corporation, Hy–Vee, Inc., Kroger Co., The Walgreen Company, Consolidated Plaintiffs.

Bradford J. Phelps, Office of the Attorney General of Arkansas, Little Rock, AR, for State of Arkansas, Intervenor Plaintiff.

Matthew A. Porter, Dechert LLP, Boston, MA, for Glaxosmithkline PLC, Smithkline Beecham Corporation, Carl J. Rose, Richard K. Anderson, Consolidated Defendants.

Robert W. Pratt, Office of the Illinois Attorney General, Chicago, IL, for State of Illinois, Intervenor Plaintiff.

Barry L. Refsin, Hangley, Aronghick, Segal & Pudlin, Philadelphia, PA, for CVS Meridian, Inc., Consolidated Plaintiff.

J. Douglas Richards, Milberg, Weiss, Berhsad & Schulman LLP, New York City, for A.F. of L.—A.G.C. Building Trades Welfare Plan, End–Payor Plaintiffs, Hy–Vee, Inc., IBEW—NECA Local 505 Health & Welfare Plan, Sheet Metal Workers Local 441 Health & Welfare Plan, Consolidated Plaintiffs.

William H. Rooney, Willkie Farr & Gallagher, New York City, for Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Consolidated Plaintiffs.

Hollis L. Salzman, Goodkind, Labaton, Rudoff & Sucharow, LLP, New York City, for Meijer Distribution, Inc., Plaintiff.

L. Kendall Satterfield, Finkelstein, Thompson & Loughran, Washington, DC, for Direct Purchaser, Consolidated Plaintiff.

Stephen H. Schwartz, Garwin, Bronzaft, Gerstein & Fisher, New York City, for Direct Purchaser, Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Consolidated Plaintiffs.

Thane D. Scott, Palmer & Dodge, LLP, Boston, MA, for Eon Labs, Inc., Consolidated Plaintiff.

Steve D. Shadowen, Hangley, Aronchick, Segal & Pudlin, Harrisburg, PA, for CVS Meridian, Inc., Consolidated Plaintiff.

Jay B. Shapiro, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.C., FL, for Direct Purchaser, Consolidated Plaintiff.

Thomas G. Shapiro, Shapiro Haber & Urmy LLP, Boston, MA, for Meijer Distribution, Inc., Meijer, Inc., Direct Purchaser, Teamsters Local No. 35 Heath Plans, Elliot Franklin, Patrick J. Lynch, Consolidated Plaintiffs.

W. Scott Simmer, Robins, Kaplan, Miller & Ciresi L.L.P., Washington, DC, for End–Payor Plaintiffs, Consolidated Plaintiff.

Christopher N. Sipes, Covington & Burling, Washington, DC, for Glaxosmithkline PLC, Smithkline Beecham Corporation, Beecham Group PLC, Consolidated Defendants.

David P. Smith, Percy, Smith, Foote, & Gadel, LLP, Alexandria, LA, for Teamsters Local No. 35 Heath Plans, Elliot Franklin, Patrick J. Lynch, Consolidated Plaintiffs.

Thomas M. Sobol, Hagens Berman LLP, Boston, MA, for A.F. of L.—A.G.C. Building Trades Welfare Plan, End–Payor Plaintiffs, Hy–Vee, Inc., IBEW—NECA Local 505 Health & Welfare Plan, Sheet Metal Workers Local 441 Health & Welfare Plan, Consolidated Plaintiffs.

Eugene A. Spector, Spector & Roseman, Philadelphia, PA, for A.F. of L.—A.G.C. Building Trades Welfare Plan, End–Payor Plaintiffs, Hy–Vee, Inc., IBEW—NECA Local 505 Health & Welfare Plan, Sheet Metal Workers Local 441 Health & Welfare Plan, Consolidated Plaintiffs.

David M. Stark, Willkie Farr & Gallagher, New York City, for Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Consolidated Plaintiffs.

Archana Tamoshunas, Garwin, Bronzaft, Gerstein & Fisher, New York City, for Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Consolidated Plaintiffs.

Joseph A. Tate, Dechert LLP, Philadelphia, PA, for Glaxosmithkline PLC, Smithkline Beecham Corporation, Defendants.

Michelle M. Teed, Oregon Department of Justice, Salem, OR, for State of Oregon, Intervenor Plaintiffs.

Richard M. Volin, Thompson & Loughran Duvall Foundry, Washington, DC, for Direct Purchaser, Consolidated Plaintiff.

Ann D. White, Mager White & Goldstein LLP, Jenkintown, PA, for Barbara Brown, Consolidated Plaintiff.

K. Craig Wildfang, Robins, Kaplan, Miller & Ciresi, L.L.P., Minneapolis, MN, for End–Payor Plaintiffs, Consolidated Plaintiff.

Pamela A. Zorn, Sherin and Lodgen LLP, Boston, MA, for Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., CVS Meridian, Inc., Rite Aid Corp., Consolidated Plaintiffs.

*MEMORANDUM*

YOUNG, Chief Judge.

## I. INTRODUCTION

By Order dated November 21, 2003, this Court allowed the end payor plaintiffs' motion for class certification with respect to persons and entities who purchased nabumetone in five "exemplar" states. Order of 11/21/03 [Doc. No. 168 in Master File No. 01–12222–WGY] at 3, 5; *see also In re Relafen Antitrust Litig.*, 221 F.R.D. 260 (D.Mass. 2004). The end payor plaintiffs, having since reached an agreement of settlement with SmithKline, now seek to extend certification to a nationwide settlement class. [Doc. No. 306]. To assist the parties in their ongoing negotiations, the Court offers the following analysis.

## II. BACKGROUND

Because the present analysis is, in the Court's view, primarily a continuation of a previous memorandum, *see Relafen*, 221 F.R.D. 260, the Court relates the factual and procedural background only briefly. In this consolidated action against SmithKline Beecham Corporation and GlaxoSmithKline PLC (collectively "SmithKline"), the plaintiffs [1] alleged that SmithKline fraudulently procured and maliciously prosecuted its patent for nabumetone, a nonsteroidal anti-inflammatory

drug sold under the brand name "Relafen." *Id.* at 263. Essentially, the plaintiffs claimed that but for SmithKline's unlawful conduct, they could have begun purchasing nabumetone in a competitive market—comprising both Relafen and its generic alternatives—as early as September 1998, nearly four years before generic nabumetone products actually became available. *Id.* at 264.

The end payor plaintiffs—parties who purchased nabumetone from sources other than SmithKline for purposes other than resale—assert claims under federal and state antitrust laws, state unfair competition statutes, and state consumer protection statutes. *Id.* at 264. On September 16, 2003, the end payor plaintiffs moved for certification of a nationwide class under Federal Rule of Civil Procedure 23(b)(2) and (3). *Id.* After hearing oral argument and conducting a "rigorous analysis" of the end payor plaintiffs' proposed order, the Court denied the motion for certification under Rule 23(b)(2) and allowed it under Rule 23(b)(3) for the following exemplar classes:

> With respect to their state antitrust and consumer protection claims—
>
>> All persons or entities who purchased Relafen or its generic alternatives in the states of Arizona, California, Massachusetts, or Vermont during the period of September 1, 1998 through June 30, 2003 for consumption by themselves, their families, members, employees, insureds, participants, or beneficiaries.
>
> and with respect to their unjust enrichment claims—
>
>> All persons or entities in the United States who purchased Relafen in the states of Arizona, California, Massachusetts, Tennessee, or Vermont during the period September 1, 1998 through June 30, 2003 for consumption by themselves, their families, members, employees, insureds, participants, or beneficiaries.

*Id.* at 288. Excluded from both classes were governmental entities; SmithKline and its officers, directors, management, employees,

---

[1]. As discussed in greater detail elsewhere, the majority of the plaintiffs in this action—including two of SmithKline's competitors, Teva Pharmaceuticals USA and Eon Labs, Inc., and many of SmithKline's customers, described by the parties as "direct purchasers" and "drugstore plaintiffs"—have settled their claims.

subsidiaries, and affiliates; persons or entities who purchased Relafen for purposes of resale; persons or entities who purchased Relafen directly from SmithKline or its affiliates; and persons or entities who suffered no economic harm as a result of SmithKline's alleged conduct. *Id.*

On November 25, 2003, SmithKline moved for summary judgment. [Doc. Nos. 169, 187, 193, 197, 202]. With respect to the end payor plaintiffs, SmithKline emphasized that states had varied in their responses to *Illinois Brick v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), in which the Supreme Court determined that under federal antitrust law, indirect purchasers (parties who, like the end payor plaintiffs, "are not the immediate buyers from the alleged antitrust violators," *Kansas v. UtiliCorp United, Inc.,* 497 U.S. 199, 207, 110 S.Ct. 2807, 111 L.Ed.2d 169 (1990)) generally lack standing to seek antitrust damages. *See* Defs.' Unjust Enrichment Mem. [Doc. No. 203] at 5–9. SmithKline maintained that in those states that construe their antitrust statutes consistently with *Illinois Brick,* permitting the end payor plaintiffs to seek restitution for unjust enrichment would allow an "end run" around state antitrust policies. *See id.* at 5–7. In addition, SmithKline continued, in those states that construe their antitrust statutes inconsistently with *Illinois Brick*—that is, those states that allow indirect purchasers to seek antitrust damages under either statutory enactments (commonly termed *"Illinois Brick* repealers") or judicial decisions—permitting the end payor plaintiffs to seek restitution for unjust enrichment would lead to unlawful "double recovery." *See id.* at 8–9. The Court agreed, in part. It allowed SmithKline's motion "with respect to unjust enrichment claims asserted under the laws of states in which such claims would constitute an end[ ]run around the state's adherence to *Illinois Brick.*" Order of 12/19/03 [Doc. No. 229] at 2–3. The Court otherwise denied the motion, mindful that the Federal Rules permit plaintiffs to plead alternative and inconsistent claims. *See* Fed.R.Civ.P. 8(e)(2).

The end payor plaintiffs now seek certification of a nationwide settlement class. [Doc. No. 306]. Members of the proposed class— defined as "persons or entities in the United States who purchased Relafen and/or its generic alternatives ... during the period of September 1, 1998 through June 30, 2003"— would share in a settlement fund of $75 million. Am. Stip. & Agreement [Doc. No. 305] ¶ 1. Recovery would vary according to the end payor's status (as a settling health plan, third-party payor, or consumer), and, more importantly for present purposes, according to the end payor's place of purchase (in a "Group I" or "Group II" state). *Id.* ¶ 17. Not surprisingly, Group I and Group II correspond to the responses to *Illinois Brick* described above: Group I states have rejected *Illinois Brick;* Group II states have not. *Id.* ¶ 2(m)-(n). To account for their varying "strengths and weaknesses," claims asserted under the laws of Group I states would be "favor[ed]" over those asserted under the laws of Group II states should the settlement fund prove insufficient. Pls.' Supp. Mem. [Doc. No. 334] at 10. Otherwise, all claims would be compensated equally, with consumers,[2] for example, receiving the greater of 100 to 150 percent of their claims or a minimum payment of $50. Am. Stip. & Agreement ¶ 17. This allocation according to place of purchase, unlike the allocation according to status, was not the result of "independent negotiations" between counsel designated to represent the distinct interests of Group I or Group II claimants. *Compare* Pls.' Mem. at 7–8.

Also before the Court are motions by the attorneys general of six Group II states: Arkansas, Idaho, Illinois, Maryland, Oregon, and Washington. [Doc. Nos. 314, 316, 318, 320, 322, 324]. The moving attorneys general seek to intervene under Rule 24(a), expressing concern that the proposed settlement would disadvantage the rights of end payors in their respective states. *See, e.g.,*

---

**2.** The distribution to third-party payors (health benefit plans that purchased nabumetone for beneficiaries) would also reflect the Group I– Group II distinction, but would do so somewhat differently. Am. Stip. & Agreement ¶ 2(t). The claims of third-party payors would be limited to 15 percent of the purchases made in Group I states plus 5 percent of the purchases made in Group II states. *Id.*

Ark.'s Mot., Attach. 1 (Ark.'s Mem.). Notwithstanding the repeated reassurances of the parties, *see, e.g.,* Pls.' Supp. Mem.; Defs.' Mem. [Doc. No. 337], and the conditional acquiescence of the attorneys general, the Court continues to have serious reservations regarding the breadth of the proposed class. In an effort to guide further negotiations, the Court expresses these reservations below.

## III.  DISCUSSION

### A.  Legal Standard

█ Here, as before, *see Relafen,* 221 F.R.D. at 265, the end payor plaintiffs bear the burden of establishing the elements necessary for class certification: the four requirements of Rule 23(a) and one of the several requirements of Rule 23(b). *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613–14, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Guckenberger v. Boston Univ.,* 957 F.Supp. 306, 325 (D.Mass.1997) (Saris, J.). The Court's role in this context is clear: it must "conduct a rigorous analysis of the prerequisites established by Rule 23," *Smilow v. Southwestern Bell Mobile Sys., Inc.,* 323 F.3d 32, 38 (1st Cir.2003)—with one exception. Because the end payor plaintiffs move to certify a settlement class, the Court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem,* 521 U.S. at 620, 117 S.Ct. 2231. The other requirements of Rule 23, however—"those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context. . . . for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

█ At oral argument, the end payor plaintiffs nevertheless asserted that courts don an entirely "different hat" at settlement. This Court disagrees. The Supreme Court in *Amchem* emphatically rejected the suggestion that the settlement concerns of Rule 23(e) supersede the certification requirements of Rule 23(a) and (b):

Subdivisions (a) and (b) focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives. That dominant concern persists when settlement, rather than trial, is proposed.

The safeguards provided by the Rule 23(a) and (b) class-qualifying criteria, we emphasize, are not impractical impediments—checks shorn of utility—in the settlement-class context.

*Id.* at 621, 117 S.Ct. 2231. Indeed, a proposed amendment to Rule 23 which would have expressly validated the end payor plaintiffs' understanding—that courts may certify a settlement class "even though the requirements of subdivision (b)(3) might not be met for purposes of trial," *id.,* 521 U.S. at 619, 117 S.Ct. 2231 (quoting Proposed Amendment to Fed.R.Civ.P. 23(b))—was widely criticized as both practically unwise and legally unsound. *See id.* (citing, *inter alia,* Letter from Steering Committee to Oppose Proposed Rule 23 to Stotler of 5/28/96, *available at* http://www.misko.com/library/steering23.PDF); *see also, e.g.,* Paul D. Carrington & Derek P. Apanovitch, The Constitutional Limits of Judicial Rulemaking: *The Illegitimacy of Mass–Tort Settlements Negotiated under Federal Rule 23,* 39 Ariz. L.Rev. 461 (1997); John C. Coffee, Jr., *Class Action "Reform": Advisory Committee Bombshell,* N.Y.L.J., May 21, 1996, at 1. Accordingly, while settlement classes "remain[ ] an important technique in the resolution of complex, class action litigation," Pls.' Mem. at 23, their utility does not excuse the Court from examining the proposed class definition with equal, if not greater, care. *See Amchem,* 521 U.S. at 620, 117 S.Ct. 2231; *Reynolds v. Beneficial Nat. Bank,* 288 F.3d 277, 279–80, 285–86 (7th Cir.2002) ("We and other courts have gone so far as to term the district judge in the settlement phase of a class action suit a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries.").

█ Nor is the Court convinced that the present settlement posture renders it wholly "inappropriate to address the strength of class claims." Pls.' Supp. Mem. at 6. As the

end payor plaintiffs emphasize, under *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the certification inquiry may not involve a "preliminary hearing into the merits." *Id.* at 177, 94 S.Ct. 2140. But the suggestion that *Eisen* bars all consideration of disparities between class members' claims "reads too much into too little." *See Waste Management Holdings, Inc. v. Mowbray,* 208 F.3d 288, 298 (1st Cir.2000). In fact, the Supreme Court's subsequent opinion in *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999), noted that one of several factors counseling against certification of the settlement class was the fact that certain claimants "had more valuable claims ... [,] the consequence being a second instance of disparate interests." *Id.* at 857, 119 S.Ct. 2295. Thus, as the Supreme Court recognized in *Ortiz,* absent at least some consideration of the "value" of class members' claims—which here varies according to differences in state law— a certifying court cannot assure "fair and adequate representation." *Id.* at 856, 119 S.Ct. 2295 (quoting *Amchem,* 521 U.S. at 627, 117 S.Ct. 2231); *see* Carrington & Apanovitch, *supra,* at 471 ("The modification of rights from those that can be enforced at trial to those that will be measured by weak conjecture [at settlement] effects a transfer of wealth from class members with clearly meritorious claims to those whose claims are more dubious.... The wealth transfer is most apparent when the court-approved settlement treats diverse class members as if their claims were of equal worth."). In addition to raising adequacy concerns, differences in state law may undermine predominance, "compound[ing]" the questions that affect only individual members. *Amchem,* 521 U.S. at 624, 117 S.Ct. 2231. For these reasons, the Court, unlike the end payor plaintiffs, may not gloss over differences in state law by characterizing all claims as "questionable but potentially viable." Pls.' Supp. Mem. at 8.

■ The Court also rejects the suggestion that its approach to determining the "content" of state law ought differ here. 19 Charles Alan Wright, Arthur R. Miller &

Edward H. Cooper, Federal Practice and Procedure § 4507. Although the Court must, in the context of settlement, "round[ ] off the differences" to some extent, Carrington & Apanovitch, *supra,* at 466, its role in resolving questions of state law remains otherwise unchanged: it "must determine issues of state law as it believes the highest court of the state would determine them," Wright, Miller & Cooper, *supra,* § 4507. The end payor plaintiffs nevertheless urge the Court to be "humble" in its determinations. As to the need for humility, this Court does not disagree. As to the consequences of humility, however, this Court has a different view. Humility does not, as the end payor plaintiffs suggest, require the Court to favor recovery. Rather, it requires the Court to apply state law " 'as it exists.' " Wright, Miller & Cooper, *supra,* § 4507 (quoting *Burris Chem., Inc. v. USX Corp.,* 10 F.3d 243, 247 (4th Cir.1993)). Here, the relevant state law is uniformly "guided" by federal interpretation. *E.g.,* Md.Code Ann., Comm. Law II § 11–202(a); *see* Pls.' Class Certification Mem. [Doc. No. 127], Ex. A. Accordingly, absent an express indication to the contrary, the Court presumes that state law is guided by the federal rule of *Illinois Brick. See FTC v. Mylan Labs., Inc.,* 62 F.Supp.2d 25, 43 (D.D.C.1999). Although this presumption acts to bar recovery in many states, it simply is not this Court's "function ... to expand the existing scope of state law." Wright, Miller & Cooper, *supra,* § 4507; *see Migliori v. Airborne Freight Corp.,* 952 F.Supp. 38, 44 n. 7 (D.Mass.1997).

Having thus established the framework for its inquiry, the Court proceeds to consider the states included in the proposed settlement class. The Court offers its analysis mindful that "at some point there must be an end to reclassification." *Ortiz,* 527 U.S. at 857, 119 S.Ct. 2295. The following variations, however, raise serious concerns of adequacy and predominance, and, as such, warrant special attention.

### B. Previously Excluded States

#### 1. Excluded "Exemplar States" [3]

*Florida, Kansas, Maine, Michigan, Minnesota, New York, North Carolina.* In

---

**3.** Adopting the practice of the end payor plain-     tiffs, the Court uses the term "exemplar states"

its previous certification order, the Court excluded end payors from the above exemplar states because the "laws of [these] states incorporate variations that counsel against certification." *See Relafen,* 221 F.R.D. at 280. Because the proposed settlement class essentially must meet the same specifications, *Amchem,* 521 U.S. at 620, 117 S.Ct. 2231, these "variations" in state law remain relevant. Significantly, the Court excluded end payors from these states not because their inclusion would "present intractable management problems," *id.* (citing Fed. R.Civ.P. 23(b)(3)(D)), but because their inclusion would raise concerns regarding the predominance of common questions, the adequacy of representation, and the superiority of class resolution. *See Relafen,* 221 F.R.D. at 276, 280. These concerns "persist[ ] when settlement, rather than trial, is proposed." *Amchem,* 521 U.S. at 621, 117 S.Ct. 2231.

■ The end payor plaintiffs nevertheless urge the Court to abandon its practice of "consider[ing] statutory and common law claims asserted under the laws of the same state as a pair," *Relafen,* 221 F.R.D. at 280. *See* Pls. Supp. Mem., Ex. A (*The Rationale for the Classification of Group I States*) ("*Rationale*") at 2–4 (including end payors from previously excluded exemplar states because either their statutory or common law claim "remains viable"). As the Court previously explained, however:

> To the extent that a judgment in this action would be claim preclusive, [as the proposed settlement would be, *see* Am. Stip. & Agreement ¶ 18,] including State A equitable claims would effectively waive State A statutory claims, raising adequacy concerns for end payors who might prefer to litigate their statutory claims individually or as part of a State A class.

to refer to Arizona, California, Florida, Kansas, Maine, Massachusetts, Michigan, Minnesota, New York, North Carolina, Tennessee, and Vermont. *See* Proposed Exemplar Order at 1.

4. Consider end payors from Maine, for example. If permitted to bring their own class action, they would be free to attempt a "stronger and more precise showing of individual impact." *See Relafen,* 221 F.R.D. at 282. They would then face no bar to asserting their statutory claims, which provide for recovery of "3 times the amount of

*Relafen,* 221 F.R.D. at 280. The need for fair and adequate representation demands "undiluted, even heightened, attention in the settlement context." [4] *Amchem,* 521 U.S. at 620, 117 S.Ct. 2231; *see also id.* at 615, 117 S.Ct. 2231 (explaining that the Rule 23(b)(3) requirements of predominance and superiority attempt to balance the "competing tugs of individual autonomy for those who might prefer to go it alone or in a smaller unit, on the one hand, and systemic efficiency on the other"). As such, the Court may not certify a class including end payors from previously excluded exemplar states without, at a minimum, ensuring that absent class members receive the "structural protection" required by *Amchem. See Ortiz,* 527 U.S. at 857, 119 S.Ct. 2295.

### 2. Group II States

■ *Alabama, Alaska, Colorado, Connecticut, Delaware, Georgia, Indiana, Kentucky, Mississippi, Missouri, Montana, New Hampshire, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Texas, Utah, Virginia, Wyoming.* The inclusion of end payors from Group II states poses its own threat to "class cohesion." *See Amchem,* 521 U.S. at 624, 117 S.Ct. 2231. Unlike end payors from Group I states, end payors from Group II states lack recognized rights of action under both the statutory schemes, *compare Relafen,* 221 F.R.D. at 278, and the common law, *see* Order of 12/19/03 at 2–3, of their respective states. As to the latter common law claims, the Court offers a brief explanation. The rule of *Illinois Brick,* to which Group II states look for guidance, seeks to "eliminate the complications of apportioning overcharges," "eliminate multiple recoveries," and "promote the vigorous enforcement of the antitrust laws." *UtiliCorp United,* 497 U.S. at 208, 212, 214, 110 S.Ct.

the damages sustained and cost of suit, including necessary and reasonable investigative costs, reasonable *experts' fees and reasonable attorney's fees."* Me.Rev.Stat. Ann. tit. 10, § 1104(1). If, on the other hand, end payors from Maine are included in the proposed settlement, they must release their statutory claims in exchange for a maximum recovery of 1.5 times the amount of their "Recognized Consumer Claims." *See* Am. Stip. & Agreement ¶¶ 17–18.

2807. Respectfully, the Court is not persuaded that these concerns "are absent under Plaintiffs' claims of unjust enrichment.'" Pls.' Supp. Mem. at 4 (quoting *In re Cardizem CD Antitrust Litig.*, Master File No. 99–md–1278, Order No. 70, at 31 (E.D.Mich. May 23, 2003), attached as Ex. A to Pls.' Unjust Enrichment Opp'n [Doc. No. 205]). Specifically, determining the benefit conferred by end payors involves at least some of "the complications of apportioning overcharges" and creates serious risk of "multiple recoveries." *See In re Terazosin Hydrochloride Antitrust Litig.*, 160 F.Supp.2d 1365, 1380 (S.D.Fla.2001) ("*Illinois Brick* expressed concerns [regarding] indirect purchasers actions .... The end payors' unjust enrichment claim raises identical concerns."); *Mylan Laboratories,* 62 F.Supp.2d at 43 ("[P]roviding monetary relief to indirect purchasers increases the risk of duplicative recovery. Therefore, restitution and/or disgorgement on behalf of indirect purchasers will be denied absent express authority for such relief under state law."). As explained in *Illinois Brick,* the "risk" arises because "following an automatic recovery of the full overcharge by the direct purchaser, the indirect purchaser could sue to recover the same [or a portion of the same] amount." *Illinois Brick,* 431 U.S. at 730, 97 S.Ct. 2061. For this reason, many of the Group I "repealers" specifically provide, for example, that "the court shall take all steps necessary to avoid duplicate liability for the same injury including transfer and consolidation of all actions." 740 Ill. Comp. Stat. 10/7; *see Ciardi v. F. Hoffmann–La Roche, Ltd.,* 436 Mass. 53, 78 n. 9, 762 N.E.2d 303 (2002). If, in determining the law of Group II states (which lack such repealers), this Court were simply to "read in" unjust enrichment claims, it would frustrate the ability of Group II states to make the same policy choices.

The parties respond that these end payors are properly included because they retain, "at a minimum, a right to appeal this Court's decision." Defs.' Mem. at 5; *see* Pls.' Supp. Mem. at 7–8. Their response, although of course accurate, largely misses the mark. The Court does not deny that Group II end payors may "upset" its determinations, either by filing an appeal, or by initiating an action in state court, *see Migliori,* 952 F.Supp. at 44 n. 7 (noting that a Massachusetts state judge, unlike a federal district judge, need "not hesitate to participate in the evolution of Massachusetts common law"). The Court determines only that their rights to assert such challenges are substantially different from the rights enjoyed by Group I end payors. For this reason, "the claims of these disparate groups cannot be mixed together under Rule 23(a)." *Cf. Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1195 (11th Cir.2003) (determining that representation was inadequate where the economic interests of certain class members were "significantly different from—and potentially antagonistic to—[those of] the named representatives purporting to represent them").

The Court is not convinced that the present Group I–Group II distinction sufficiently addresses these concerns. First, as noted above, this allocation was not made after "division into homogenous subclasses," each "with separate representation." *Ortiz,* 527 U.S. at 856, 119 S.Ct. 2295. Second, although Group I consumers would be "favored" should the fund prove insufficient, consumers otherwise would receive the same compensation "without regard to their state of residence." Pls.' Mem. at 18. Thus, in the more likely event that the fund is sufficient, *see* Pls.' Supp. Mem. at 18 (noting that "historically consumer participation in these settlements has been less than 20%"), consumers would be treated "all the same," *Ortiz,* 527 U.S. at 857, 119 S.Ct. 2295. As noted in *Ortiz,* this "itself is an allocation decision with results almost certainly different from the results that those with [more valuable claims] would have chosen." *Id.; accord Amchem* ("The disparity between ... categories of plaintiffs, and the diversity within each category are not made insignificant by the District Court's finding that petitioners' assets suffice to pay claims under the settlement. Although this is not a 'limited fund' case certified under Rule 23(b)(1)(B), the terms of the settlement reflect essential allocation decisions designed to confine compensation and to limit defendants' liability." (citation omitted)).

Notwithstanding the above, the parties suggest that Group II end payors must be included because as a practical matter, "a settlement may be impossible unless some compensation is provided." Pls.' Supp. Mem. at 11–13; Defs.' Mem. at 3. Both *Amchem* and *Ortiz,* however, expressly rejected similar arguments, namely that a reviewing court may certify a settlement class simply because settlement is practical or desirable:

> The argument is sensibly made that a nationwide administrative claims processing regime would provide the most secure, fair, and efficient means of compensating victims of asbestos exposure. Congress, however, has not adopted such a solution. And Rule 23, which must be interpreted with fidelity to the Rules Enabling Act and applied with the interests of absent class members in close view, cannot carry the large load ....

*Amchem,* 521 U.S. 591, 628–29, 117 S.Ct. 2231, 138 L.Ed.2d 689 (footnote omitted).

> Under the present regime, transactional costs will surely consume more and more of a relatively static amount of money to pay these claims.

> But we are not free to devise an ideal system for adjudicating these claims. Unless and until the Federal Rules of Civil Procedure are revised, the Court's opinion correctly states the existing law ...

*Ortiz,* 527 U.S. at 865, 119 S.Ct. 2295 (Rehnquist, C.J., concurring). Here, as in *Amchem,* legislative choices—even choices not to act—must be respected: "Differences across states may be costly for courts and litigants alike, but they are a fundamental aspect of our federal republic and must not be overridden in a quest to clear the queue in court." *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1020 (7th Cir.2002).

## C. States Represented by their Attorneys General

*Arkansas, Idaho, Illinois, Maryland, Oregon, Washington.* The above Group II states move to intervene under Rule 24(a), seeking to secure the more favorable allocation made to Group I states. Each of these states authorizes its attorney general to represent residents as *parens patriae,* Ark.Code Ann. § 4–75–315; Idaho Code § 48–108; 740 Ill. Comp. Stat. 10/7; Md.Code Ann., Com. Law II, § 11–209; Or.Rev.Stat. § 646.775; Wash. Rev.Code § 19.86.080, and, with the exception of those discussed below, repudiates the rule of *Illinois Brick,* Ark.Code Ann. § 4–75–315; Idaho Code § 48–108; 740 Ill. Comp. Stat. 10/7. Notwithstanding these commonalities, the laws of certain states incorporate variations that cast doubt on the "interest" claimed by the attorneys general. *See* Fed.R.Civ.P. 24(a)(2).

### 1. Adherence to *Illinois Brick*

■ *Maryland, Oregon, Washington.* The Court previously suggested that the unjust enrichment claims asserted by Group II end payors may raise "identical" *Illinois Brick* concerns. *Terazosin,* 160 F.Supp.2d at 1380. The same is true of *parens patriae* claims asserted by attorneys general. The "rationales of ... *Illinois Brick* may not apply with equal force," but they nevertheless are implicated. *See UtiliCorp United,* 497 U.S. at 208, 110 S.Ct. 2807. For example, although attorneys general typically will have adequate incentives to "promote the vigorous enforcement of the antitrust laws," recovery on behalf of indirect purchasers nevertheless creates a serious risk of "multiple recoveries." *Id.* As explained above, the risk arises because the rule of *Illinois Brick,* which has been incorporated by the courts of Maryland, Oregon, and Washington, bars recovery by the indirect purchaser in favor of "recovery of the full overcharge by the direct purchaser." *Illinois Brick,* 431 U.S. at 730, 97 S.Ct. 2061; *see Davidson v. Microsoft Corp.,* 143 Md.App. 43, 52, 792 A.2d 336 (2002) ("We hold today, therefore, that until the legislature expressly provides otherwise, *Illinois Brick* bars suits by indirect purchasers seeking to recoup alleged overcharges under MATA [the Maryland Antitrust Act]."); *Daraee v. Microsoft Corp.,* No. 0004 03311, 2000 WL 33187306, *1 (Or.Cir. June 27, 2000) ("The indirect purchaser rule of *Illinois Brick v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977)[,] applies to Oregon's Antitrust Act."); *Blewett v. Abbott Labs.,* 86 Wash.App. 782, 789, 938 P.2d 842 (1997) ("The holding of *Illinois Brick* is ra-

tional and based on the collectively greater experience of federal courts in adjudicating antitrust suits. We conclude we must follow it.")[5]; *see also Oregon Laborers–Employers Health & Welfare Trust Fund v. Philip Morris Inc.*, 185 F.3d 957, 963 n. 4 (9th Cir.1999) (noting that "the district court ... [had] treated [Oregon] state and federal antitrust claims as one and the same for purposes of standing analysis" and doing the same).[6] Because the Court concludes that permitting additional recovery on behalf of indirect purchasers would undermine the policies of these states, it determines that their intervention is not warranted.

### 2. Recently Enacted Repealers

*Arkansas, Idaho.* Certain of the attorneys general assert authority under recently enacted *Illinois Brick* repealers. *See* Ark. Code Ann. § 4–75–315 (effective Apr. 8, 2003); Idaho Code § 48–108 (effective July 1, 2000). Unlike interpretations or clarifications of existing law, *see, e.g., Elkins v. Microsoft Corp.*, 174 Vt. 328, 338, 817 A.2d 9 (2002), the above repealers "effectuate a change in [state] law," *id. See* Act of Apr. 8, 2003, 2003 Ark. Acts 1172 ("It is found and determined by the Eighty-fourth General Assembly that without the amendments herein, the Attorney General is unable to adequately protect the interests of the consumers of the State of Arkansas ...."); Idaho Competition Act of 2000, ch. 148, 2000 Idaho Sess. Laws 148 ("The proposed Idaho Competition Law

replaces Idaho's present Antitrust Act."). More specifically, they "increase a party's liability for past conduct." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *see California v. ARC America Corp.*, 490 U.S. 93, 105, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989) (noting that state indirect purchaser claims "impose liability over and above that authorized by federal law").

■ For this reason, the Court presumes that the Arkansas and Idaho repealers "are to be given only prospective application." *City of Dover v. Barton*, 337 Ark. 186, 189, 987 S.W.2d 705 (1999); *accord City of Garden City v. City of Boise*, 104 Idaho 512, 515, 660 P.2d 1355 (1983). To presume the contrary would offend "[e]lementary considerations of fairness," which "dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Landgraf*, 511 U.S. at 265, 114 S.Ct. 1483. Here, the conduct complained of[7]—namely SmithKline's enforcement of its patent, *see In re Relafen Antitrust Litig.*, 286 F.Supp.2d 56, 61 (D.Mass.2003)—occurred prior to the statutory enactments. Following the traditional presumption, then, the Court declines to apply the statutes absent a clearer expression of retroactive reach. *Compare* Ark.Code Ann. § 4–75–320(c) ("This section is not intended to allow for the commencement of any action by the Attorney General under the provisions of this

**5.** The Court interprets a subsequent portion of *Blewett*—which rejects the indirect purchaser's request for injunctive relief but notes that she is "not entirely without a remedy," *Blewett*, 86 Wash.App. at 790, 938 P.2d 842—to refer to the attorney general's authority to "restrain and prevent" antitrust violations, Wash. Rev.Code § 19.86.080. A contrary interpretation (that is, an interpretation which would permit the attorney general to seek monetary relief on the indirect purchaser's behalf) would implicate the "multiple recoveries" concerns of *Illinois Brick*, a rule the *Blewett* court had just confirmed as "rational" and applicable. *Blewett*, 86 Wash.App. at 789, 938 P.2d 842.

**6.** On the persuasive authority of determinations by a "federal district court judge who sits in a particular state," see Wright, Miller & Cooper, *supra*, § 4507:

  As a general proposition, a federal district court judge who sits in a particular state, especially one who has practiced before its courts,

may be better able to resolve complex questions regarding the law of that state than is a federal appellate judge who has no such personal acquaintance with the law of the state. *Id.*

**7.** In addressing the reach of New York's repealing amendment, the *Cardizem* court focused its attention on the time of injury, rather than the time of violation. *Cardizem, supra*, at 12. This Court respectfully disagrees. The presumption against retroactive legislation is rooted in the belief that "individuals should have an opportunity ... to conform their conduct" to the law. *Landgraf*, 511 U.S. at 265, 114 S.Ct. 1483. Accordingly, it is the relationship between the statute and the conduct—not the injury—that raises concerns of "unfair surprise" and "upsetting expectations." *Id.*, 511 U.S. at 283 n. 35, 114 S.Ct. 1483.

subchapter for events occurring prior to the enactment of this section of which the Attorney General had actual knowledge.").

### D. Non-Exemplar Group I States

*District of Columbia, Hawaii, Iowa, Louisiana, Nebraska, Nevada, New Mexico, New Jersey, North Dakota, South Dakota, West Virginia, Wisconsin.* The Court concludes by considering the Group I states not addressed in the Court's previous certification order. Like the exemplar states, each of these Group I states, with the exception of those discussed below, "permits indirect purchaser actions under its antitrust, consumer protection, or unfair trade practices statutes." *Relafen*, 221 F.R.D. at 278; *see* D.C.Code Ann. § 28–4509; Haw.Rev.Stat. § 480–3; *Comes v. Microsoft Corp.*, 646 N.W.2d 440 (Iowa 2002); *Arthur v. Microsoft Corp.*, 267 Neb. 586, 676 N.W.2d 29 (2004), Nev.Rev.Stat. Ann. § 598A.210; N.M. Stat. Ann. § 57–1–3, N.D. Cent.Code § 51–08.1–08; S.D. Codified Laws § 37–1–33; W. Va. Code St. R. tit. 142, § 9; Wis. Stat. § 133.18. In addition, however, the laws of these states incorporate certain significant differences, to which the Court now turns.

#### 1. Adherence to *Illinois Brick*

*Louisiana, New Jersey.* As described above, "absent an express indication to the contrary, the Court presumes that state law is guided by the federal rule of *Illinois Brick.*" The authority cited by the end payor plaintiffs—which at best suggests a "split of authority" in the states of Louisiana and New Jersey, *Rationale* at 6—fails to provide such an indication. *See Free v. Abbott Labs., Inc.*, 176 F.3d 298, 301 (5th Cir.1999) ("Because the *Illinois Brick* scheme is preferable for this purpose, we believe Louisiana courts would follow it.") [8]; *Van Natta Mechanical Corp., v. Di Staulo*, 277 N.J.Super. 175, 190, 649 A.2d 399 (N.J.Super.Ct.App.Div.1994) (affirming the dismissal of a state antitrust claim because the plaintiff failed to meet the standing requirements applied under federal law).[9] Accordingly, the Court concludes that these states are more properly placed in Group II.

#### 2. Minimum Statutory Damages

*New Mexico, Hawaii.* Certain of the Group I states provide minimum statutory damages for antitrust plaintiffs. *See* Haw. Rev.Stat. § 480–13(b) ("Any consumer who is injured by any unfair or deceptive act … (1) May sue for damages sustained by the consumer and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 [or $5,000 'where the plaintiff is an elder'] or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorneys' fees together with the costs of suit[.]"); N.M. Stat. Ann. § 57–12–10(B)–(C) (permitting parties complaining of an unfair or deceptive trade practice to recover "actual damages or the sum of one hundred dollars ($100), whichever is greater" as well as attorneys' fees and costs). Not surprisingly, though, these mini-

---

**8.** The end payor plaintiffs urge the Court to disregard the Fifth Circuit's determination because Louisiana antitrust law " 'was intended to be sweeping in its breadth.' " Pls.' Supp. Mem. at 6 (quoting *Louisiana Power & Light Co. v. United Gas Pipe Line Co.*, 493 So.2d 1149, 1154 (La. 1986)). As the Fifth Circuit noted, however, *Louisiana Power* addressed a question of statutory interpretation "distinguishable" from the "policy laden" question of defining antitrust injury: "Louisiana courts have not eschewed the importance of defining antitrust injury in this manner but, in fact, have deferred to federal precedent." *Free*, 176 F.3d at 300.

Moreover, even if the Court were not convinced by *Free*, it would remain convinced by *Loew's*: "In *Loew's, Incorporated v. Don George, Inc.*, 237 La. 132, 110 So.2d 553 (La.1959), the Supreme Court held that an antitrust action sounds in tort and the one year prescriptive period of La. C.C. art. 3492 applies in a private action." *State ex rel. Ieyoub v. Bordens, Inc.*, 684 So.2d 1024, 1026 (La.Ct.App.1996). Under *Loew's*, end payors from Louisiana, unlike end payors from other Group I states, are subject to an apparent time bar, a fact that " 'invariably weighs against class certification under Rule 23(b)(3).' " *See Relafen*, 221 F.R.D. at 283 (quoting *Waste Management*, 208 F.3d at 296).

**9.** The Court is not persuaded that end payors claims present a different question because they are "premised primarily on the New Jersey Consumer Fraud Act" rather than the New Jersey Antitrust Act. Pls.' Supp. Mem. at 5. Like the unjust enrichment claims described above, consumer fraud claims may create precisely the risk of "multiple recoveries," which *Illinois Brick* (and parallel New Jersey decisions) seek to avoid.

mum remedies are unavailable in class actions. *See* Haw.Rev.Stat. § 480–13(c)(1) ("The minimum $1,000 recovery provided in subsections (a) and (b) shall not apply in a class action or a de facto class action lawsuit[.]"); N.M. Stat. Ann. § 57–12–10(E) ("In any class action filed under this section, the court may award damages to the named plaintiffs as provided in Subsection B of this section and may award members of the class such actual damages as were suffered by each member of the class as a result of the unlawful method, act or practice.").

Including end payors from Hawaii and New Mexico in the proposed class thus waives their rights to substantial[10] statutory damages. As the Court explained in its previous opinion:

> Such waiver necessarily casts doubt on the named plaintiffs' fitness to represent class members who might prefer to pursue statutory or punitive remedies individually.
>
> Nor are the Court's concerns lessened because any class member wishing to pursue his or her statutory right to minimum and treble damages may opt out of the class. Scholars have recognized that as a practical matter, the opportunity to opt out is unevenly distributed, with far lesser opportunity held by plaintiffs like those here, who have small rather than independently viable claims, and who receive best practicable rather than individual notice.

*Relafen,* 221 F.R.D. at 286 (citations and alterations omitted). For these reasons, the Court determines that Hawaii and New Mexico ought be grouped with the excluded exemplar states.

### 5. Direct Benefit

*North Dakota.* The Court turns finally to unjust enrichment claims asserted under the common law of North Dakota. In *Apache*

*Corp. v. MDU Resources Group, Inc.,* 603 N.W.2d 891 (N.D.1999), the North Dakota Supreme Court suggested that the doctrine of unjust enrichment applies only "if another 'has, without justification, obtained a benefit at the *direct expense* of the [complainant].'" *Id.* at 895 (quoting *Midland Diesel Serv. & Engine Co. v. Sivertson,* 307 N.W.2d 555, 557 (N.D.1981)) (alteration in original) (emphasis added). Here, the benefits that SmithKline received were obtained most directly from wholesalers, who, in turn, obtained benefits from end payors. Because its precedent casts doubt on the end payors' unjust enrichment claims, North Dakota ought also be grouped with the excluded exemplar states. *See Relafen,* 221 F.R.D. at 287 (excluding North Carolina plaintiffs from the exemplar classes because they "would be subject to an individualized defense regarding the 'direct benefit' element of their unjust enrichment claims").

## IV.  CONCLUSION

In sum, the Court is not convinced that the proposed settlement class, as presently defined, meets the requirements of Rule 23. The Court is not insensitive to the "tugs ... of systemic efficiency." *Amchem,* 521 U.S. at 615, 117 S.Ct. 2231. But it is perhaps in these circumstances—when it is faced with obvious savings of time, effort, and expense—that the Court must most carefully safeguard the rights of absent class members "who might prefer to go it alone." *Id.*

---

**10.** The value of their statutory damages provisions distinguishes the laws Hawaii and New Mexico from the law of Massachusetts, for example. *See* Mass. Gen. Laws ch. 93A, § 9 ("[I]f the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater ...."). The Seventh Circuit in *Reynolds* suggested that waiver of such modest amounts may not present a "fatal" conflict. *See Reynolds,* 288 F.3d at 282 (noting

that where class members would receive $15 for one refund anticipation loan and $30 for two or more such loans, there was an unremarked conflict "between those class members who took out one or two refund anticipation loans and those who took out more than two and thus will receive no compensation for the additional damages," but declining to find this conflict fatal "in light of the modesty of the stakes").